JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Marva Gammons, appeals the judgment of the trial court denying her motion to suppress. For the reasons that follow, we affirm the trial court.
 {¶ 2} Appellant was indicted by the Cuyahoga County Grand Jury on two counts of possession of crack cocaine. Appellant filed a motion to suppress evidence and the trial court held a hearing on same. At the conclusion of the hearing, the trial court denied appellant's motion. The case proceeded to a jury trial.[1] The jury found appellant guilty of count one and not guilty of count two. Appellant was thereafter sentenced to six months of community control.
 {¶ 3} At the suppression hearing, Detective William Moskal and Officer Clinton Ovalle of the Cuyahoga Metropolitan Housing Authority ("CMHA") police department testified on behalf of the State. The police explained that they responded to unit 811 of the CMHA's property located at 3495 E. 98th Street upon a complaint regarding drug activity at the unit. Upon arriving at the unit, the police knocked on the door and the leaseholder, Robert Gammons,[2] answered the door. The police informed Robert of the reason for their presence and Robert invited them in. Contraband and a knife were subsequently recovered from Robert's person.
 {¶ 4} While Officer Ovalle was dealing with Robert, Detective Moskal observed appellant in the bedroom and requested that she come out into the living room area where Robert and Officer Ovalle were. Appellant was attired in bedtime clothing and at some point asked if she could put a robe on. Detective Moskal agreed to appellant's request; prior to allowing her to put the robe on, however, he did a pat-down search of it for officer safety and felt what he believed to be illegal contraband. Several crack pipes with crack cocaine residue in them were recovered from the robe. Robert claimed that the robe and the items found therein were his.
 {¶ 5} The police subsequently asked appellant for identification. Appellant stated that the identification was in her purse, and the purse was then retrieved by the police. Detective Moskal testified that he asked appellant whether he could retrieve her identification from the purse. Both Detective Moskal and Officer Ovalle testified that appellant consented to Detective Moskal retrieving her identification and told the detective that it could be found in her wallet. Upon opening appellant's wallet, which was a billfold type, a rock of crack cocaine fell out.
 {¶ 6} Appellant testified on her own behalf at the suppression hearing, and denied giving the police consent to go into her purse. Appellant explained that upon getting up to get her identification from her purse, one of the law enforcement officials knocked her down, and then both Detective Moskal and Officer Ovalle went into her bedroom, found her purse, and searched it in the bedroom. Appellant explained that the police then came out the bedroom and one of the law enforcement officials said, "oh, look what I found in your purse."
 {¶ 7} In denying appellant's suppression motion, the trial court found that appellant voluntarily consented to the search of her purse and that police safety allowed the pat-down of the robe.[3]
 {¶ 8} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court inState v. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 9} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Citations omitted.) Id. at 96.
 {¶ 10} According to the Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This provision of the Fourth Amendment has been applied to actions by the states through the Fourteenth Amendment. State v.Orr (2001), 91 Ohio St.3d 389, 391, 745 N.E.2d 1036.
 {¶ 11} Under the Fourth Amendment, a search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. State ex rel. Rear Door Bookstore v.Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354, 364,588 N.E.2d 116, following United States v. Jacobsen (1984),466 U.S. 109, 113, 104 S.Ct. 1652. "A woman's expectation of privacy with respect to her purse is as great, if not greater, than the expectation of privacy connected with a closed container in the glove compartment of an automobile." State v. Tyler (Nov. 29, 1994), Franklin App. No. 94APA04-492, discretionary appeal not allowed (1995), 72 Ohio St.3d 1412, 647 N.E.2d 1387. A search may pass constitutional muster, however, if an individual consents to it.
 {¶ 12} The touchstone of an analysis under the Fourth Amendment is always the reasonableness in all the circumstances of a particular governmental invasion of a citizen's personal security. State v. Lozada (2001), 92 Ohio St.3d 74, 78,748 N.E.2d 520. The Fourth Amendment test for a valid consent to search is that consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances.Ohio v. Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417, 421. Among the circumstances to be considered are the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. State v. Dettling (1998),130 Ohio App.3d 812, 814, 721 N.E.2d 449, following Schnecklothv. Bustamonte (1973), 412 U.S. 218, 226, 36, 93 S.Ct. 2041.
 {¶ 13} Further, Terry v. Ohio (1960), 392 U.S. 1,88 S.Ct. 1868, permits a limited protective search of a detainee's person for concealed weapons provided the officer has reasonable suspicion that his safety, or the safety of others, is in danger.Garfield Hts. Metro. Park Dist. v. Skerl (1999),135 Ohio App.3d 586, 592, 735 N.E.2d 27. The proper inquiry is whether the officer reasonably determines that the detainee is armed and presently dangerous to the officer or others. State v. Hoskins,
Cuyahoga App. No. 80384, 2002-Ohio-3451. Reasonable suspicion must be supported by specific and articulable facts and circumstances which, together with any rational inferences that may be drawn therefrom, reasonably support a conclusion that the detainee is armed and dangerous. State v. Stewart, Montgomery App. No. 19961, 2004-Ohio-1319.
 {¶ 14} Initially, we address the issue raised by appellant on appeal, but not raised during the trial court proceedings, regarding the voluntariness of Robert's consent to the police to enter and search the unit. Appellant's failure to raise this issue in the trial court constitutes a waiver of the error claimed. See State v. Williams (1977), 51 Ohio St.2d 112,116-117, 364 N.E.2d 1364, 1367, vacated in part on other grounds,Williams v. Ohio (1978), 438 U.S. 911; State v. Broom (1988),40 Ohio St.3d 277, 288-289, 533 N.E.2d 682, 695-696. We therefore do not reach the propriety of the warrantless entry and search of the unit.
 {¶ 15} That said, we now turn to the crux of this appeal: 1. whether the pat-down search of the robe was constitutional and 2. whether appellant voluntarily consented to the search of her purse.
 {¶ 16} With regard to the pat-down search of the robe,Terry, supra, allows such a search when an officer is justified in believing that a person may be armed and presently dangerous. Here, the police had retrieved a knife and contraband from Robert's person prior to appellant asking for Robert's robe. As such, it was justifiable, for officer safety, that the robe be patted-down prior to allowing appellant to put it on.
 {¶ 17} With regard to the search of the purse, the issue of whether appellant voluntarily consented to the search is one of credibility. Appellant maintains that she did not consent to the search, while both law enforcement officials testified that she did. As already mentioned, the credibility of witnesses is an issue for the trier of fact. Curry, supra. In evaluating the witnesses' credibility in this case, the trial court found that appellant did consent to a search of her purse. Giving deference to the judgment of the trier of fact on the issue of credibility, as we are required to do, we accept the trial court's finding. Thus, the trial court properly denied appellant's motion to suppress as it related to the search of her purse.
 {¶ 18} Based upon the aforementioned, we find no merit to appellant's sole assignment of error and affirm the trial court's denial of her motion to suppress.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, P.J., and Patricia A. Blackmon, J., concur.
[1] We note that appellant relies on testimony from both the suppression hearing and trial in support of this appeal, which only challenges the denial of the suppression motion. As the only issue before this court is the denial of appellant's suppression motion, we disregard facts cited by appellant which were adduced at trial.
[2] Robert and appellant were married at the time of the incident, but living separate and apart. Robert resided at the subject unit and appellant resided elsewhere.
[3] Appellant's motion to suppress filed with the trial court only challenged the search of her purse. Based on the testimony presented at the hearing, however, the court, sua sponte, included the pat-down search of the robe as part of appellant's motion to suppress. At trial, the count on which the jury acquitted appellant was relative to the drugs found during the pat-down search of the robe.