[Cite as *State v. Quarterman*, 2013-Ohio-4037.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   99317

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTWAN QUARTERMAN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565028

**BEFORE:**  E.A. Gallagher, J., Stewart, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**    September 19, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio   44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Holly Welsh
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Antwan Quarterman appeals the judgment of the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm in part, reverse in part and remand for resentencing.

{¶2} A true bill indictment was returned against Quarterman charging him with three counts of aggravated robbery, two counts of kidnapping, two counts of felonious assault and one count of petty theft. One- and three-year firearm specifications were attached to each of the felony counts. The case proceeded to a bench trial where the following facts were elicited.

{¶3} At approximately 11:00 p.m. on April 11, 2012, Eric Simmons was walking with his sister, Rayn Simmons and, as they passed a bus stop near the intersection of Superior and E. 123, they were approached by two males whom they did not know. The shorter of the two males produced a gun and ordered them to "come here." Eric and Rayn stopped and a struggle ensued when Eric attempted to grab the gun from the gunman. Eventually the two separated and the gunman began to fire the gun at Eric. Eric fled into a dark alley, pursued by the gunman who continued to fire at him. While the gunman was pursuing Eric, his accomplice was robbing Rayn of her purse and phone. The gunman then turned to Rayn and pointed his gun directly at her face to assist in the robbery at that time. Eric emerged from the alley and was shot in his left hip by the gunman. Both robbers then fled the scene.

**{¶4}** Eric suffered nerve damage when the bullet passed through his hip and into his bowels. He was hospitalized for twenty-seven days.

**{¶5}** In May 2012, police showed to Eric and Rayn photo arrays but they were unable to identify anyone as being involved in the robbery. Eric and Rayn viewed photo arrays again in July 2012, and both identified appellant as being involved in the robbery.

**{¶6}** At trial Eric testified that appellant was not the gunman but was the man who was robbing his sister while he was being shot. Eric admitted however, that he did not get a good look at the robber. Rayn identified appellant as the gunman and testified that she remembered his facial features, particularly his eyes and eyebrows. Rayn testified that in selecting appellant from a police photo array she indicated that she was only 60% certain of the identification because the appellant's hair in the photograph was different from the night of the robbery.

**{¶7}** At the conclusion of trial, appellant made a motion for acquittal as to all counts, pursuant to Crim.R. 29. The trial court denied the motion.

**{¶8}** At sentencing, the trial court merged several of the charges as allied offenses of similar import. The aggravated robbery, kidnapping and petty theft relating to Rayn were merged. The aggravated robbery and kidnapping charges relating to Eric were merged. Finally the two felonious assault charges relating to Eric were merged. The state elected to proceed to sentencing on the two aggravated robbery charges associated with Eric and Rayn and the felonious assault in violation of R.C. 2903.11(A)(2). The

trial court imposed prison terms of four years for each of the aggravated robbery charges

along with three years on the firearm specifications attached to both counts. The trial

court imposed a prison term of eight years on the felonious assault conviction in addition

to three years on the attached firearm specification. The trial court merged all firearm

specifications for the purpose of sentencing. Finally, the trial court ordered that the four

year prison term for each aggravated robbery conviction be served consecutive to one

another but concurrent to the eight year sentence for felonious assault, for a cumulative

prison term of 11 years.[1]

{¶9} Appellant's four assignments of error are as follows:

### Assignment of Error I

The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

### Assignment of Error II

Appellant's convictions are against the manifest weight of the evidence.

### Assignment of Error III

The admission of the unauthenticated pretrial photographic array identification evidence at appellant's trial was plain error or the result of ineffective assistance of counsel in violation of appellant's state and constitutional rights.

---

[1] We note that the trial court's journal entry does not report the manner of conviction or the state's election of merged counts for sentencing. We direct the trial court to correct these omissions upon remand.

Assignment of Error IV

Appellant's sentence is contrary to law and an abuse of discretion.

{¶10} Regarding appellant's first assignment of error, this court has said that in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*.

{¶11} Appellant first argues that the state presented insufficient evidence identifying him and his role in the robbery. Appellant specifically takes issue with the differing testimony of Eric and Rayn as to his role. We begin by noting that Ohio's complicity statute, R.C. 2923.03, provides that no person acting with the required culpability shall aid or abet another in committing an offense. Such person shall be prosecuted and punished as if he were a principal offender and a charge of complicity may be stated in terms of the complicity section or in terms of the principal offense. *See* R.C. 2923.03(F). Although the victims' testimony differed as to the role of appellant, both witnesses identified him as one of the two men acting in complicity to commit the

offenses in this case. The state presented sufficient identity evidence that appellant was either the principal or an accomplice to each of the offenses. *See, e.g.*, *State v. Higbee*, 2d Dist. Miami No. 07-CA-13, 2007-Ohio-6135, ¶ 10.

{¶12} In addition to his general objection to the sufficiency of the identity evidence as to all counts, appellant further argues that there was insufficient evidence to support guilty verdicts and convictions for aggravated robbery, kidnapping and felonious assault.

{¶13} With respect to the aggravated robbery of Eric, appellant argues that there was insufficient evidence offered as to anyone robbing or attempting to rob Eric. We disagree. Counts 2 and 3 charged appellant with aggravated robbery of Eric in violation of R.C. 2911.01(A)(1) and (3) respectively. R.C. 2911.01(A) provides:

> A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.

{¶14} The evidence, viewed in a light most favorable to the prosecution, was that appellant and a companion confronted both Eric and Rayn at gunpoint, intended to rob them both and were only unsuccessful in the attempt to rob Eric because Eric resisted and

fled into an alley. The evidence similarly revealed that, during the attempted theft, one of those men shot Eric in the hip resulting in serious physical harm to him.

{¶15} Appellant next argues that the kidnapping charges set forth in Counts 4 and 5 were not supported by sufficient evidence. In both counts, appellant was charged with violating R.C. 2905.01(A)(2) which provides:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter * * *.

{¶16} Appellant argues that no evidence was presented to demonstrate that appellant removed or restrained the liberty of either Eric or Rayn. Again, we disagree. The evidence demonstrated that appellant and his accomplice confronted Eric and Rayn, at gunpoint, with the purpose of committing a robbery. Eric testified that the gunman ordered them to "come here" while pointing a handgun at them. As a result of the threat and demand, both Eric and Rayn who at the time were passing by appellant and his accomplice stopped walking and raised their hands in compliance.

{¶17} Finally appellant argues that insufficient evidence was presented to support the felonious assault charges. Counts 6 and 7 charged appellant with felonious assault of Eric in violation of R.C. 2903.11(A)(1) and (2) respectively. R.C.

2903.11(A) provides:

> (A) No person shall knowingly do either of the following:

> (1) Cause serious physical harm to another or to another's unborn;

> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶18}** We find appellant's argument without merit. The evidence was that either appellant or his accomplice fired repeated gunshots at Eric before Eric fled into a dark alley. Once the gun was pointed at Rayn's face, Eric emerged from hiding, was shot and was seriously wounded.

**{¶19}** Appellant's first assignment of error is overruled.

**{¶20}** Regarding appellant's second assignment of error, a manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

**{¶21}** In light of the evidence presented at trial, particularly the identification of appellant as one of the men involved in the robbery by both victim witnesses, we cannot say that the finder of fact clearly lost its way in finding appellant guilty of the above crimes.

**{¶22}** Appellant's second assignment of error is overruled.

**{¶23}** Regarding appellant's third assignment of error,

> When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.

*State v. Payne*, 8th Dist. Cuyahoga No. 90230, 2008-Ohio-3149, ¶ 26-27, quoting *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992).

**{¶24}** Appellant did not file a motion to suppress the pretrial identification evidence nor did he raise any objection to the admissibility of the photo array. He, therefore, failed to comply with the requirements of Crim.R. 12(C)(3) and (D) to support the exclusion of this evidence. Under Crim.R. 12(H), he has waived all but plain error on appeal. *State v. Yates*, 8th Dist. Cuyahoga No. 96774, 2012-Ohio-919, ¶ 41.

**{¶25}** Crim.R. 52(B) states that plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d

91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶26} We find no plain error in this instance. The defendant has the burden to show the identification procedure was unduly suggestive. *State v. Harris*, 2d Dist. Montgomery No. 19796, 2004-Ohio-3570, ¶ 19. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. In this case, appellant's argument that the photo arrays were unduly suggestive stems from testimony by Eric Simmons where he notes that he was shown two different photos featuring appellant with different hair styles. Appellant failed to elicit further testimony exploring the context of the administration of these lineups and, as previously noted, did not file a motion to suppress this evidence. As such, appellant has failed to satisfy his burden of showing that the identification procedure was unduly suggestive.

{¶27} Even if we assumed that the identification procedure in this case was unduly suggestive, both victims made an in-court identification of appellant as one of the men involved in the robbery thus rendering the photo array identification duplicative. Because the photo array was duplicative evidence, we cannot say the outcome of the trial would have been different had the photo array been excluded. *See, e.g., State v. Brown*, 8th Dist. Cuyahoga No. 80412, 2002-Ohio-4577, ¶ 23. Consequently, the admission

does not rise to the level of plain error. Furthermore, the present case was a bench trial and we note that appellate courts presume that a trial court considered only relevant and admissible evidence in a bench trial. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17.

{¶28} Appellant next argues that the photo array evidence was not authenticated pursuant to Evid.R. 901(A) and thus there is no way to discern, from the record, that the photo arrays were administered in compliance with the law. The state acknowledged at oral argument that it did not follow the traditional route of introducing the photographic array evidence by calling the blind administrators to provide foundation testimony regarding the process. The state took the position that such testimony was unnecessary in a bench trial where the judge was presumably familiar with photographic array administration procedures. We disagree with the state's position which assumes compliance with the law by the administrator and provide a cautionary warning on such reliance in the future. However, the record reflects that the admission of the photo arrays was addressed by the court prior to trial. Appellant indicated to the trial court his intent not to move to suppress the state's photo array evidence and further stipulated to the authenticity of all the documents the state intended to introduce. In light of this authenticity stipulation, appellant's present criticism of the state's decision not to call the police officers who administered the photo arrays rings hollow.

**{¶29}** Appellant further argues that the photo arrays violate R.C. 2933.83 and broadly concludes that a "blind administrator" was not used to conduct the photo arrays because the arrays exist in a traditional "six-pack" form rather than the folder system addressed in R.C. 2933.83.[2] Appellant's argument is misplaced. We have previously held that R.C. 2933.83 does not require the use of the "folder system" but, rather, the "folder system" is one system that can be used by law enforcement for photo lineups. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 77, citing *State v. Winters*, 6th Dist. Lucas No. L-12-1041, 2013-Ohio-2370, ¶ 42.

**{¶30}** Finally, appellant argues that his trial counsel was ineffective for failing to file a motion to suppress the victims' photo array identifications. We disagree. Trial counsel will not be deemed ineffective "unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Carey*, 8th Dist. Cuyahoga No. 88487, 2007-Ohio-3073, ¶ 24, quoting *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To demonstrate prejudice, appellant must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id.*

---

[2]The cover sheets to the photo arrays in fact indicate that a blind administrator was used in the administration of the arrays. This is reflected in all but one of the arrays. In that array the cover sheet was not filled out at all. However appellant was not featured or identified in that particular photo array.

{¶31} As we addressed above, the record lacks significant evidence to support appellant's contention that the photo arrays were unduly suggestive and even if appellant's trial counsel had been successful in excluding the arrays the outcome of the trial would not have been different. *See*, *e.g*., *State v. Abercrombie*, 8th Dist. Cuyahoga No. 63689, 1993 Ohio App. LEXIS 4238 (Appellant was not prejudiced where trial counsel failed to move to suppress photo array evidence where such evidence was at best cumulative.) Additionally, we note that the introduction of the photo arrays added little to the state's case while simultaneously providing appellant's trial counsel with an opportunity to call into question the reliability of any identifications made by the witnesses. Rayn, who had the best view of the appellant, identified two other suspects as potentially involved in the robbery despite agreement by both witnesses that only two men were involved. Although Eric also identified appellant as being involved, in the photo arrays that he was shown, he identified a completely different person as appellant's accomplice from the two men identified by Rayn. The decision by appellant's trial counsel to not move to suppress the photo arrays appears to be a strategic decision to explore these inconsistencies that he would not have had if the arrays were excluded.

{¶32} Appellant's third assignment of error is overruled.

{¶33} Regarding appellant's fourth assignment of error, we begin by noting that this court no longer applies the abuse of discretion standard of *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, when reviewing a felony sentence. *State v.*

*A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7. Instead, we follow the

standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶34}** Appellant contends that the trial court failed to make the necessary

findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive prison terms at

sentencing. Am.Sub.H.B. No. 86, which became effective on September 30, 2011,

"revived" R.C. 2929.14(E)(4) and reinstated the requirement that trial courts make

factual findings on specified issues before imposing consecutive sentences. *State v.*

*Matthews*, 8th Dist. Cuyahoga No. 97916, 2012-Ohio-5174, ¶ 45.

**{¶35}** R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is

necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶36} A trial court is not required to use talismanic words to comply with the guidelines and factors for sentencing. *Matthews* at ¶ 48. But it must be clear from the record that the trial court actually made the findings required by statute. A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *Matthews* at ¶ 48.

{¶37} The record in the present case does not reflect that the trial court made the requisite findings pursuant to R.C. 2929.14(C)(4). We find that the trial court erred in imposing consecutive sentences without making the requisite findings.

{¶38} Appellant's fourth assignment of error is sustained.

**{¶39}** Judgment affirmed in part and reversed in part; case remanded for resentencing and to correct the journal entry.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

_____

EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., and
LARRY A. JONES, SR., J., CONCUR